## Jack Ciulla v. The State.

No. 12946.   Delivered March 12, 1930.
Rehearing denied May 21, 1930.
Second rehearing denied June 11, 1930.
Reported in 28 S. W. (2d) 541.

The opinion states the case.

*J. Meek Hawkins, Thos. C. Turnley* and *E. H. Cavin,* all of Houston, for appellant.

*O'Brien Stevens,* Cr. Dist. Attorney, and *E. T. Branch,* Asst. Cr. Dist. Attorney, both of Houston, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is embezzlement, a felony; the punishment confinement in the penitentiary for five years.

Appellant is an attorney-at-law. Letha Scott, a negress, who had shot her husband and was under complaint charging her with assault with intent to murder, employed appellant to defend her. It appears from the state's testimony that she had not known appellant until he called at the jail and requested her to employ him. According to her testimony, a fee of two hundred and fifty dollars for the examining trial was agreed upon. After the examining trial, the fee was fixed in the additional sum of $500.00, making a total of $750.00. Letha's Scott's brothers gave appellant a note for $500.00, which, according to the testimony of the state, was not a retainer fee, but, together with the $250.00 paid by Letha Scott, represented the entire fee appellant was to receive for representing Letha Scott. Letha Scott's husband died. The grand jury investigated her case and failed to return a bill. According to the state's testimony, Letha Scott found that her husband had insurance policies in the sum of $539.00. She offered these policies to appellant as security for the $500.00 note executed by her brothers. It appears that she had authority to assign the policies. The version of the state's witnesses was further to the effect that appellant prepared an assignment of these policies to him and took Letha Scott to the office of John M. Mathis, Jr., a notary. The notary explained the assignment to her, advising her that it provided that appellant should receive the entire amount of the proceeds of the policies. Whereupon she advised Mr.

Mathis that she intended to give the policies as security for the five hundred dollars. The notary inserted in the assignment a provision to the effect that any amount collected by appellant in excess of $500.00 was to be paid to Letha Scott. It appears from the state's testimony that appellant, although present, made no protest. He and Letha Scott left the office. Later appellant destroyed the assignment. Another assignment was executed. Appellant afterwards discovered that a policy for $1,000.00, which deceased had left, had been turned over to Daniels, the undertaker who had buried deceased. Appellant induced Letha Scott to execute an assignment to the $1,000.00 policy, taking her to another notary, although Mr. Mathis had an office next door. Letha Scott testified that appellant told her that she was executing papers proving the death of her husband, in order that he might collect for her the proceeds of the insurance policies. She said that she did not know that she was executing an assignment to the insurance policies that would enable appellant to collect the proceeds and retain the entire amount. She and her brothers testified that the total fee due appellant was $750.00. Appellant went to Daniels, the injured party, and induced him to surrender the $1,000.00 policy Letha Scott had left with him as security for the payment of her husband's burial bill. Daniels testified that he delivered the policy to appellant upon condition that appellant would collect the amount due thereon and pay him out of said amount the sum of $273.50, due him as an undertaker for burying deceased. Appellant collected the amount due under the policies and applied the full amount to his own use and benefit. Not a dollar was turned over to Letha Scott. Although Daniels called upon appellant to comply with his agreement to deliver to him the $273.50 belonging to him, appellant refused. The total amount collected by appellant on the insurance policies and retained by him aggregated about $1,643.75.

Testifying in his own behalf, appellant defended on the ground that it was agreed between him and Letha Scott at the time the assignment was executed that the proceeds of the policies were to be retained by appellant, and that he should cancel the $500.00 note executed by her brothers, which he did. He said it was agreed that the $500.00 note would represent a retainer fee. He denied that he entered into an agreement with Daniels, the injured party, at the time the $1,000.00 policy was delivered to him by Daniels, to collect the amount due Daniels and deliver it to him in payment of the funeral bill.

There was testimony tending to show that the $500.00 note was not cancelled until appellant was under investigation for embezzlement. Morever, there was testimony tending to show that appelant wrote the word "retainer" on the $500.00 note after Letha Scott's brothers had executed and delivered the note to him.

It is earnestly insisted that the evidence is insufficient, it being urged that Daniels had no interest in the insurance policy he delivered to appellant, and that the testimony failed to show that appellant was the agent of Daniels.

It seems to be appellant's position that inasmuch as Letha Scott had made a written assignment of the policy in Daniels' possession to appellant, and had not theretofore executed a written assignment to Daniels, that Daniels had no interest of any character in the policy or in the distribution of its proceeds. We are unable to agree with appellant's contention. The evidence shows that Letha Scott had delivered the policy to Daniels prior to executing the assignment to appellant. Although she made no written assignment to Daniels, their agreement was that the amount due on the policy should be collected, and $273.50 of the proceeds should belong to him, this amount being due him for burying her husband. Again, it was the state's theory, given support in the testimony of Letha Scott, that the assignment of the policy to appellant was obtained by fraud on the part of appellant. It is our understanding that the injured party had the right, when the policy was delivered to him under the agreement mentioned, to require that $273.50 of the proceeds to be derived therefrom be delivered to him as his property, in order that the debt due him be discharged. We understand the rule to be that in the absence of a statutory provision, or provision in the insurance policy to the contrary, an insurance policy may be assigned by delivery thereof, without a written assignment, if there is sufficient legal consideration supporting the transfer. Ruling Case Law, Vol. 14, page 1001. Appellant has failed to cite any case announcing a contrary doctrine, and we know of none. It is not shown that the policy required a written assignment, and we know of no statute inhibiting a parol assignment of an insurance policy. The opinion is expressed that, under the evidence, $273.50 of the proceeds of the $1,000.00 policy collected by appellant was the property of the injured party Daniels.

We have no doubt that the state's testimony is sufficient to show that appellant was the agent of Daniels for the purpose of collecting the $273.50 due Daniels, and that, under their agreement, it was

appellant's duty to deliver said amount of money to Daniels when collected. In Corpus Juris, Vol. 2 on page 420 appears the following: "An agent is defined to be one who acts for or in place of another by authority from him; one who undertakes to transact some business or manage some affair for another by authority and on account of the latter." See also Brown v. State, 99 Tex. Cr. R. 441; Coney v. State, 100 Tex. Cr. R. 380; Cowan v. State, 93 S. W. 553.

For the first time appellant contends that there is a variance between the name of the injured party, as alleged in the indictment, and the name as testified to by the witnesses. The name of the injured party was alleged in the indictment to be Daniel. The proof showed that his name was Daniels. We are of the opinion that the variance is immaterial. The rule seems to be that if the names may be sounded alike without doing violence to the power of the letters found in the variant orthography, and, if the name as stated, be idem sonans with the true name, the variance and misspelling is not material. Davis v. State, 224 S. W. 510. In Davis' case it was held that Hodge and Hodges come within the rule, and that the variance was not of sufficient importance to require a reversal of the judgment. The variance between William and Williams has been held to be immaterial. Williams v. State, 5 Tex. Cr. Apps. 230. Sawyer and Sawyers are not materially variant. Sawyers v. State, 48 S. W. 512.

Appellant requested the court to charge the jury, in substance, that if appellant acquired the insurance policy from Daniels by virtue of an assignment from Letha Scott he should be acquitted. The special charge omitted the state's theory that the assignment had been obtained by appellant by fraud. In so far as the assignment could be a defense, it appears to have been covered in the main charge, wherein the jury were advised that if they believed that Letha Scott assigned the policy to appellant to be collected by him, and that the entire proceeds were to be retained by appellant as his fee for representing her in her murder case, they would acquit appellant. The doctrine of reasonable doubt was applied to this charge. We are of the opinion that, under the facts, the charge last referred to sufficiently presented appellant's affirmative defense.

Other questions are presented which we have not undertaken to discuss. A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

LATTIMORE, JUDGE.—In his motion for rehearing appellant first insists that we erred in holding or assuming that Letha Scott made a parol assignment or a delivery of the thousand dollar policy to Daniels. We will let the witnesses answer this contention. Letha Scott testified:

"I never did turn that thousand dollar policy over to Mr. Ciulla. Daniels had that thousand dollar policy. I gave it to him to get his funeral expenses out of it; that is what I turned it over to him for."

Daniels testified:

"Letha Scott had turned that policy over to me. The purpose for which she turned the policy over to me was, she said she wanted the funeral expenses paid out of the policy. That was the same policy that I turned over to Jack Ciulla. The reason why I turned it over to him was this. He told me when I delivered it that he was her attorney, that he was collecting the insurance for her, and as soon as he collected this insurance he would pay us our funeral expenses out of the insurance."

That a cross-examination of either witness drew forth expressions which may be used as a basis for different conclusions, amounts to no more than raising a question for the jury to decide,—the credibility of the witnesses and the weight of their testimony being for the decision of the jury. The law of such situation, if the testimony be taken for true, in so far as same pertains to Daniels' right to assert an assignment of the policy by delivery and agreement between himself and Letha Scott, in plain. Schmick v. Bateman, 77 Texas, 326; Briggs v. Briggs, 247 S. W. Rep. 312. Daniels was in possession of the policy. Letha Scott was its owner, and both testified that possession had been delivered to Daniels, to hold until he was paid $273.50.

The next point in the motion is that we erred in holding that appellant was the agent of Daniels. On the facts, Daniels swore that having possession of and holding the policy to secure payment of his money, he turned same over to appellant to be by him collected and $273.50 of the proceeds returned to Daniels. Mr. Daniels testified: "When I turned it (the policy) over to him

(Ciulla) he told us he would collect the insurance and pay us our bill, * * * I would not have delivered the policy to him if he had not agreed to turn over to me $273.50. I was holding it as security for my money, for my funeral expenses." If this testimony be true, appellant took said policy from Daniels in trust,—and from Daniels' standpoint, to collect same and out of the proceeds to remit to Daniels an amount equal to his debt. The question of agency does not seem to us debatable. Webb v. State, 8 Texas Crim. App. 310; Epperson v. State, 22 Texas Crim. App. 694; Miller v. State, 92 Texas Crim. Rep. 259.

Appellant again argues in reference to supposed errors in the admission of testimony of the cancellation of a certain $500.00 note; the admission of testimony that after taking Letha Scott to Mr. Mathis, a notary public, who wrote in a written assignment of certain policies certain matters, appellant tore up this assignment, and took her to another notary; that we erred in holding "Daniel" and "Daniels" idem sonans; that we erred in upholding the rejection of an affidavit by one Morales relative to a law suit filed against appellant,—each of which matters has been examined, but in none of which do we think error appears.

There are few things better settled by the decisions of this court than that a witness testifying to the good reputation of some other witness or party, may be asked on cross-examination and for the purpose of breaking the force of his testimony, concerning particular transgressions of the person whose good reputation he has affirmed. We think authorities need not be cited.

Letha Scott and her brother testified that the entire fee payable to appellant for his service in defending her was $750.00. As tending to show appellant's fraudulent purpose, running throughout the entire transaction and embracing the thousand dollar policy in question, it was competent to prove that when appellant prepared an assignment to himself from Letha Scott of certain policies, collection of which would have put into his hands more than said $750.00, and the notary to whom he took Letha Scott for her acknowledgement to such assignment,—upon being told by her that her intent was to transfer such policies to appellant as security only,—then wrote in said assignment that all over $750.00 thereof should go to Letha Scott, that appellant thereafter tore up said assignment and prepared and had Letha Scott execute another omitting the fact that any of the proceeds of said policies were to go to her.

We have tried to give careful consideration to each of the contentions raised in the able motion filed for appellant, but are not in agreement with the soundness of any of them. We think the case properly disposed of in our former opinion.

The motion for rehearing is overruled.

*Overruled.*

### APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant ably urges that we did not discuss his contention upon rehearing that the indictment herein is fundamentally defective. He says it is not enough for said indictment to state that it is the act of "The Grand Jury of Harris County, State of Texas, duly organized at the February Term, A. D. 1929." He insists that it should be stated in the indictment that same was the act of a grand jury of the State of Texas; and further that same should state that such grand jury was duly selected, tried, impaneled, sworn and charged to inquire into and true presentment make, etc.

In 1881 the legislature of this State enacted what is now Art. 409, C. C. P. in which a general form for an indictment is laid down, and same is exactly followed by the indictment in this case, as comparison will demonstrate. Judge Willson in his original form book, and in the present edition now in use, see Form 7-a, Willson's Criminal Forms, 4th Ed., sets out the same general form prescribed in Art. 409, C. C. P., supra. Said form has been referred to in many of the opinions of this court as being sufficient.

All our courts take judicial cognizance of the fact that the counties of this State are integral parts of the political and governmental entity which we call the State. Their officers, when elected or selected and qualified according to the forms therefor prescribed by the State, acting through its law-making body, become officers of the State as well as of the political subdivisions, by which for convenience and other reasons satisfactory to the sovereign state they may be selected and in which they may function. The statement in the instant indictment, to-wit: "The Grand Jury of Harris County, State of Texas," in our opinion, sufficiently designates said grand jury as composed of grand jurors of the State.

On the other point, we think the expression "Duly organized," as contained in the statute and the indictment before us, comprehends all those things which are separately referred to by appellant, and which by statute are made to enter into the organization of

a grand jury. Chap. 1, Title 2, C. C. P. is entitled "Organization of the grand jury," and sets out in detail the various steps to be taken, including those things which appellant insists should be separately set out in detail in this indictment, such as the impaneling, swearing, charging, etc., of said grand jurors. The first article in Chap. 2 of said title begins as follows: "After the grand jury is organized," etc. Appellant cites a number of authorities, and argues from them the correctness of his conclusions in diction delightful to peruse, and exhibits a knowledge and research which are commendable, but we are not convinced of the soundness of his conclusion. He cites Carrillo v. State, 81 Texas Crim. Rep. 636, in which case the lamented Judge Davidson held that an indictment which began as follows: "The grand jury of Cameron County, Texas, upon their oaths, present in the District Court thereof, at the March Term, A. D. 1917," was a sufficient compliance with the second and third requisites of the statute prescribing the necessary ingredients of an indictment. The formal part of said indictment is not so nearly in compliance with the statute as the one before us.

Being unable to agree with the contentions made, and being further of the opinion that the indictment is sufficient in the matters complained of, appellant's leave for request to file second motion for rehearing is denied.

*Denied.*